UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EARL BENSON,

                            Plaintiff,

    v.                                              **DECISION AND ORDER**
                                                    05-CV-784S

SGT. ROBERT J. YAEGER, OFFICER MICHAEL
A. KIBLER, & the CITY OF BATAVIA,

                            Defendants.

# I.  INTRODUCTION

Plaintiff commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983

alleging that Defendants violated his Fourth and Fourteenth Amendment rights under the

United States Constitution, and also committed assault and battery under New York State

law.  (Docket No. 1.)[1]  Presently before this Court is Defendants' Motion for Summary

Judgment.  (Docket No. 14.)  For the reasons discussed below, Defendants' motion is

granted in part, and denied in part.

# II.  BACKGROUND

A.    **Facts**

On March 12, 2005, Linda Stefaniak called Plaintiff Earl Benson and asked him to

---

[1]Plaintiff's Complaint alleges four claims, which include: (1) a Fourth and Fourteenth Amendment
claim for excessive force naming Sergeant Yaeger and Officer Kibler as the defendants; (2) a violation of
Plaintiff's civil rights naming the City of Batavia as the defendant; (3) assault and battery naming Yaeger,
Kibler, and City of Batavia as the defendants; and (4) malicious prosecution naming Batavia and Yaeger
as defendants.  (Docket No. 1.)  However, Plaintiff subsequently withdrew the following claims: (1) his
entire second claim for civil rights violations; (2) his claim for punitive damages against the City of Batavia
as set forth in his third claim for assault and battery; and (3) his entire fourth claim alleging malicious
prosecution.  (Docket No. 18.)  As a result, all that remains are Plaintiff's Fourth and Fourteenth
Amendment claims as to Yaeger and Kibler, and Plaintiff's allegations of assault and battery against
Yaeger, Kibler, and the City of Batavia.

1

go out with her that evening.  (Defs' Statement, ¶ 17.)[2]  Benson accepted Stefaniak's invitation, and at approximately 10:30 p.m., Stefaniak picked up Benson at his home.  (Id.) The two of them went to "Billy Goat's," where Benson drank approximately five Labatts Blue beers, and five shots of Jack Daniel's whiskey.  (Id.)

At approximately 2:00 a.m., Benson and Stefaniak left Billy Goat's with Mary Ditzel. (Defs' Statement, ¶ 18.)  Stefaniak drove, and on the way home, police officers pulled Stefaniak over, and arrested her for Driving While under the Influence.  (Id.)  One of the police officers instructed Benson to make arrangements to park Stefaniak's car.  (Benson Dep., Docket No. 16, Ex. H, 29:19-21.)  Benson then called Nick Salvador.  (Id., at 29:3-6.) Shortly thereafter, Salvador arrived, parked Stefaniak's vehicle, picked up Benson and Ditzel, and drove Ditzel home.  (Defs.' Statement, ¶ 19.)  After he dropped off Ditzel, Salvador drove Benson to the Batavia police station to inquire about Stefaniak.  (Id.)

At the police station, Dispatcher Daniel Rieks greeted Benson and Salvador.  (Defs' Statement, ¶ 20.)  Benson asked Rieks how long it would be until Stefaniak was released, and Rieks replied, "approximately three hours."  (Defs.' Statement, ¶ 36.)[3]  Benson responded by stating, it was a bunch of "fucking bullshit" and "just give her her fuckin' tickets and let her on her way."  (Defs. Statement, ¶ 37.)  Sergeant Robert Yaeger then intervened, and asked Benson if he could be of assistance, to which Benson again asked

---

[2] Referring to Defendant's Local Rule 56.1 Statement of Material Facts Not In Dispute, which contains citations to the record evidence.  (Docket No. 15.)  Also, rather than listing the material facts in chronological order, Defendants' Statement of Material Facts Not In Dispute is a collection of excerpts from various individuals' depositions.  As a result, there are numerous factual contradictions within Defendants' own Statement of Facts.

[3] Benson alleges that Rieks responded that it would be "probably about an hour."  (Defs.' Statement, ¶ 21.)

how long it would be until Stefaniak was released. (Defs.' Statement, ¶ 40.) Yaeger stated "2-3 hours," and Benson replied "that's a bunch of bullshit." (Defs. Statement, ¶¶ 40-41.) Yaeger told Benson to stop swearing, and instructed him to leave and if he returned he woudl be arrested for trespassing. (Defs. Statement, ¶ 42.)[4] Salvador encouraged Benson to leave, and the two of them went to a nearby Tim Hortons restaurant. (Defs.' Statement, ¶¶ 22-23.)

Approximately a half hour later, Benson returned to the police station, and pushed the intercom button. (Defs.' Statement, ¶ 24.) The intercom button is used to get the Dispatcher's attention. (Defs.' Statement, ¶ 74.) Dispatcher Rieks asked how he could help Benson, and Benson asked Rieks if Stefaniak was ready. (Defs.' Statement, ¶¶ 24-25.) Rieks told Benson that it would be two to three hours, and Benson began yelling it was "a bunch of bullshit." (Defs. Statement, ¶ 44.) Benson then repeatedly pressed the buzzer, and at one point held the buzzer for 20 to 30 seconds. (Defs. Statement ¶ 45.) At this point, Yaeger, who was inside the police station and could hear the buzzer, decided that he was going to arrest Benson. (Yaeger Dep., Docket No. 16, Ex. K, 17:19-20.) Yaeger was accompanied by Officer Michael Kibler, and the two of them went downstairs towards Benson. (Defs. Statement, ¶¶ 77 & 103.)

When Yaeger and Kibler reached the bottom of the stairs, Benson backed away from the door. (Defs.' Statement, ¶ 28.) Yaeger told Benson that he was under arrest and knocked a cup of coffee out of Benson's hands. (Defs.' Statement, ¶ 78.) Benson then took a step back, pulled his arms up, and clenched his fists near his chest. (Defs.'

---

[4]Benson contends that Yaeger told him to leave only after he (Benson) spotted Stefaniak, and asked why she was not allowed to make a phone call. (Defs. Statement, ¶ 21.)

Statement, ¶ 79; Yeager Dep., 20:14-17; Pl.'s Mem. Opp. Summ J., p. 4.)  According to

Yaeger, Benson then stated, "be careful, I have a bad shoulder." (Defs.' Statement, ¶ 85.)

Yaeger grabbed Benson's right arm, and Kibler grabbed his left arm.  (Defs. Statement,

¶ 82.)  Yaeger and Kibler were unable to get Benson's arms behind his back in order to

handcuff him (Defs. Statement, ¶ 83) and as a result, they took Benson to the ground

(Defs.' Statement, ¶ 106).  While on the ground, Benson struggled with the officers, and

the officers could not get his hand behind his back.  (Defs.' Statement, ¶ 83.)  Yaeger then

told Kibler he could use his OC spray, and, according to Yaeger, Benson then put his left

arm behind his back, and became compliant.  (Defs.' Statement, ¶ 84.)

Benson was then taken to a holding cell.  (Defs.' Statement, ¶ 109.)  After about 15-

20 minutes in the holding cell, Officer Kibler claims that Benson was screaming and yelling

that he was in pain.  (Id.)  Specifically, Benson was complaining about a shoulder injury.

(Id.)  Although there is a factual discrepancy about which officer(s) checked on Benson in

the holding cell, and which officer decided to call for an ambulance, an ambulance was

summoned to the police station, and transported Benson to the hospital.[5]

On March 13, 2005, the day after Benson was taken into custody, Michael E. Leit,

M.D., performed emergency surgery on Benson for his shoulder injuries.  (Leit Aff., Docket

No. 20, Ex. B, ¶ 7.)  Dr. Leit stated the following:

> It is my opinion, with a reasonable degree of certainty in my field of
> medical practice, that the injuries sustained by Mr. Benson were caused by
> a backward rotation of his arm up and over his head.  Further, it is my

---

[5] Officer Streeter claims that he saw Benson sitting on a bench in the holding cell, and asked if anyone had contacted medical, to which Sergeant Yaeger replied no, and asked if Streeter would make the call.  (Streeter Dep., Docket No. 16, Ex. M, 8:16-9:5.)  In contrast, Segeant Yaeger claims that Officer Kibler checked on Benson, determined that he needed medical attention, and called medical – EMS. (Yaeger Dep. 24:22-25:10.)

opinion based on the severe damage to the soft tissue and the severity of the shoulder dislocation, that the force applied to cause the injury was extreme.  In addition, multiple posterior rib fractures are consistent with significant force applied to his back.

In all my years of practicing orthopaedic surgery, this is one of the worst shoulder injuries I have ever seen, including many I have observed and treated in major trauma centers and sustained by military personnel in combat.

I reviewed the x-rays from United Memorial Hospital in Batavia and Strong Memorial Hospital in Rochester.  The humeral head was forced out [sic] the front of the shoulder joint and was sitting on the chest wall.  The only way this severe dislocation could happen is by powerful rotation of the shoulder over the head, in a wide arc.  I describe this as a windmill action.

In my opinion, stated with a reasonable degree of medical certainty, the officers description of the arrest sequence, omits details of how the Plaintiff's arm was rotated over his head.  The injury sustained by Mr. Benson did not occur in the absence of backward rotation; it did not occur with an ordinary takedown and subsequent handcuffing.

(Id., at ¶¶ 9-11, 16.)

Salvatore F. Valvo, a former New York State Police Officer, states that such conduct, as described by Dr. Leit – i.e., rotating Benson's arm in a "windmill" fashion – is "excessive and a deviation from accepted standards of police procedure."  (Valvo Aff., Docket No. 20, Ex. C, ¶ 8.)  Valvo also went on to state the following:

There is no prescribed police conduct when effecting an arrest that includes taking the arrestee's arm and rotating in a fashion described by Dr. Leit.

The description of the police conduct as given by the officers themselves is appropriate police conduct.  However, according to Dr. Leit, that is apparently not what happened.

(Id., at ¶¶ 8-9.)

In contrast to Dr. Leit and Mr. Valvo's testimony, Michael D. Maloney, M.D., a licensed physician, offered a different medical conclusion.  (Maloney Aff., Docket No. 22.)

Specifically, Dr. Maloney stated that, "[i]t is my opinion to a reasonable degree of medical certainty that the injuries sustained by plaintiff are consistent with a forward movement of his right arm to the front and to his right side.  The injury sustained by Mr. Benson did not necessarily have to be caused by a backward rotation of his arm up over his head." (Id., at ¶ 6.)

Although there is a stationary video camera that continuously records the area where the physical altercation between Benson, Yaeger, and Kibler occurred, the differences of medical opinion could not be resolved by reference to the security tapes because there was a technological problem with the camera system that evening.  (Sehm Aff., Docket No. 16, Ex. N, 16:16-19.)  The tape that was in the VCR at the time of the incident is blank, and there is no recording of the event in question.  (Robinson Dep., Docket No. 16, Ex. J, 17:8-18:10.)  Tapes from two days prior to the incident are also blank.  (Id., at 23:8-14.)

As a result of this incident, Benson was charged with Trespass, Criminal Mischief, Fourth Degree, and Resisting Arrest.  Prior to his trial, the District Attorney withdrew the charge of Criminal Mischief, Fourth Degree.  On September 28, 2005, after a jury trial in Batavia City Court before the Honorable Michael L. Delpato, Benson was convicted of Trespass and Resisting Arrest.  (Docket No. 16, Ex. F.)  Benson was ultimately fined $100 and placed on 3 years probation.  (Id.)

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted

where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the specific context of an excessive force claim, and a claim for assault and battery under New York State law[6], the existence of medical evidence that contradicts the defendants' version of events can preclude summary judgment by raising an issue of fact. See, e.g., Pierre-Antoine v. City of New York, No. 04-CV-6987, 2006 WL 1292076, at * 5

---

[6] "The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim," Chen v. City of Syracuse, No. 03-CV-1927, 2009 WL 529553, at *5 (N.D.N.Y. Mar. 2, 2009), and thus, summary judgment will be denied as to plaintiff's assault and battery claims if summary judgment is denied as to plaintiff's Fourth Amendment excessive force claims. LaLonde v. Bates, 166 F. Supp. 2d 713, 719 (N.D.N.Y. 2001). This is discussed at greater length in subsection C, "Plaintiff's Claims for Assault and Battery under New York State Law."

(S.D.N.Y. May 9, 2006) (denying defendants' motion for summary judgment because, among other reasons, plaintiff's medical evidence established a genuine issue of material fact); Robbins v. Aetna Life Ins. Co., No. 03-CV-5792, 2006 WL 2589359, at *10 (E.D.N.Y. Sep. 8, 2006) ("In light of the conflicting medical evidence, the court finds that neither party has succeeded in eliminating any genuine issue of material fact, making summary judgment on the merits inappropriate."); Arookwood v. Valdez, No. 99-CV-10285, 2001 WL 776939, at *4 (S.D.N.Y. July 11, 2001) ("The contradictory diagnoses made by defendant's examining physician ... do not negate plaintiff's evidence.  At best, [the defendant's doctor's] report gives rise to questions of credibility and highlights a genuine issue of material fact appropriate for resolution at trial."); Skorupski v. Suffolk County, 652 F. Supp. 690, 693 (E.D.N.Y 1987) (denying defendants' motion for summary judgment because there were conflicting accounts, and thus an issue of fact, which included medical evidence supporting plaintiff's claimed injuries); Coastal Dry Dock & Repair Corp. v. Willard, 147 F. Supp. 808, 810 (D.C.N.Y. 1957) (held that conflicting medical testimony presented a triable issue precluding summary judgment).

## B.    Plaintiff's Claims of Excessive Force

In his Complaint, Plaintiff alleges that Defendants Yaeger and Kibler ("Officers") used excessive force upon his arrest, and that the use of such force amounts to a violation of his Fourth and Fourteenth Amendment rights under the United States Constitution. (Docket No. 1, ¶ 14.)  Defendants argue that they are entitled to summary judgment as to both claims.  This Court will begin with a discussion of Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment excessive force claim.

### i.      Fourth Amendment Analysis

#### a.      *The Reasonableness of the Officers' Conduct*

Defendants argue that summary judgment is warranted because the Officers employed an objectively reasonable amount of force during Plaintiff's arrest. In support of this contention, Defendants note that, upon spotting the Officers outside, Plaintiff "raised his fists to his chest in a fighter's stance," and further describe Plaintiff's behavior as "uncooperative, disobedient, unlawful, dangerous, and violent." (Defs.' Mem. Supp. Summ. J., Docket No. 17, p. 13.) Defendants also emphasize Plaintiff's conviction for resisting arrest and trespass as evidence of Plaintiff's unruly behavior.

An excessive force claim that arises in the context of an arrest invokes the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their person ... against unreasonable ... seizures." Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing U.S. CONST. amend. IV.) In order to establish that an officer used excessive force, the plaintiff must demonstrate, "in light of the totality of the circumstances faced by the arresting officer, [that] the amount of force used was objective [un]reasonable at the time." Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (citing Graham, 490 U.S. at 397). "The inquiry therefore 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. at 123 (citing Graham, 490 U.S. at 396). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force

claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty America, 361 F.3d at 123.

A person, who has been convicted of resisting arrest, may bring a subsequent civil suit against the arresting officer for that officer's use of excessive force during the arrest. As the Second Circuit explained:

> The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating the arrest.

Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000) (italics in original).

Applying these principles to the instant case, this Court finds that Defendants' Motion for Summary Judgment is denied for a number of reasons. First, Dr. Leit's testimony, wherein he explicitly rejects the Officers' recitation of events based upon his medical knowledge, establishes a genuine issue of material fact. See, e.g., Pierre-Antoine, 2006 WL 1292076, at * 5; Robbins, 2006 WL 2589359, at *10 ("In light of the conflicting medical evidence, the court finds that neither party has succeeded in eliminating any genuine issue of material fact, making summary judgment on the merits inappropriate"). Second, if this Court were to credit Plaintiff's version of events, a reasonable jury could find that the Officers' use of force qualifies as "excessive." See Valvo Aff., ¶ 8 ("the actions of the police officers [as described by Dr. Leit] were excessive and a deviation from accepted standards of police procedure. There is no prescribed police conduct when effecting an arrest that includes taking the arrestee's arm and rotating it in a fashion described by Dr.

10

Leit.") And third, although the Officers were permitted to use the degree of force necessary to effectuate Plaintiff's arrest, a jury could reasonably find that they were not permitted to powerfully "windmill" Plaintiff's arm over his head causing "one of the worst shoulder injuries [Dr. Leit] ha[d] ever seen." (Leit Aff., ¶¶ 10-11.)

The medical opinion proffered by Dr. Maloney, which disputes Dr. Leit's opinion, does not eliminate the possibility that the Officers used excessive force, but only sets forth a conflicting medical opinion. Because a reasonable jury could find, after examining all of the evidence on the record, including Dr. Leit's and Mr. Valvo's testimony, that the Officers used excessive force, Defendants' motion must be denied. Accordingly, it will be left for the jury, not this Court, to determine what happened during Plaintiff's arrest, and whether the Officers used reasonable force.

. . .

For the reasons stated above, this Court cannot conclude that the Officers' conduct during the course of Plaintiff's arrest was objectively reasonable as a matter of law given the disputed issues of material fact that exist. Accordingly, Defendants' Motion for Summary Judgment on such grounds is denied.

### b. Qualified Immunity

Defendants also argue that the Defendant Officers are entitled to qualified immunity. In support of their argument, Defendants contend that "it was reasonable for them to believe that their actions did not violate any law when confronted with Plaintiff's violent behavior." (Defs.' Mem. Supp. Summ. J., Docket No. 17, p. 14.) Defendants further argue that there is not a clearly established rule prohibiting them from acting as they did under

the circumstances, and at the very least, "Yaeger and Kibler were within 'the hazy border between excessive and acceptable force' to which qualified immunity applies." (Id.)

"Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Zeller v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Police officers are entitled to qualified immunity, if: (1) their conduct does not violate clearly established constitutional rights; or (2) it was objectively reasonable for them to believe that their acts did not violate those rights." Jeanty v. County of Orange, 379 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2005) (internal citations omitted). Additionally, "[e]ven officers who are found to have used excessive force may be entitled to an extra layer of protection from the 'sometimes hazy border between excessive and acceptable force.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The relevant inquiry [for the extra layer of protection] 'is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Stephenson, 332 F.3d at 77 (citing Saucier, 533 U.S. at 202, 121 S.Ct. 2151).

The reasonableness of a police officer's conduct is at issue in both a Fourth Amendment excessive force analysis as well as step two of the qualified immunity test. See Cowan v. Breen, 352 F.3d 756, 764 (2d Cir. 2003) (denying summary judgment as to defendant's claim of qualified immunity because the reasonableness of the officer's conduct was already decided in the excessive force analysis). And because the rights at issue are often clearly established, "[t]he Second Circuit has stated that in excessive force

cases the qualified immunity and Fourth Amendment analyses often 'converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'" <u>Public Adm'r of Queens County ex rel. Estate and Beneficiaries of Guzman v. City of New York</u>, No. 06-CV-7099, 2009 WL 498976, at *5 (S.D.N.Y. Feb. 24, 2009) (citing <u>Cowan</u>, 352 at 764 n. 7).

Here, "[i]t is indisputable that freedom from the use of excessive force is a clearly established constitutional right." <u>Jeanty</u>, 379 F. Supp. 2d at 542. As a result, the only issue is whether the Officers' conduct was objectively reasonable – the very question upon which this Court has found there are genuine issues of material fact. Because the factual disputes as to the objective reasonableness of the Officers' conduct overlap in both the excessive force context as well as the qualified immunity context, summary judgment must be denied here.

. . .

For the reasons stated above, there are triable issues that must be left for the jury to resolve, and therefore Defendants' Motion for Summary Judgment is denied.

### c. *Collateral Estoppel*

In the event that this Court does not dismiss Plaintiff's Complaint in its entirety, Defendants alternatively argue that Plaintiff is collaterally estopped from re-litigating his own conduct because of his conviction for resisting arrest and trespassing. (Defs.' Mem. Supp. Summ. J., p. 5.) According to Defendants, "[s]ince Plaintiff is collaterally estopped from denying his dangerous conduct and his conduct in resisting arrest, and may not offer evidence inconsistent therewith, Defendants' undisputed conduct in subduing Plaintiff was

objectively reasonable as a matter of law." (Defs.' Reply Supp. Summ J., p. 8.)

Defendants also argue that this case is analogous to Diggs v. New York Police Dept., 04-CV-1849, 2005 WL 3533158 (E.D.N.Y. Dec. 22, 2005). (Defs.' Mem. Supp. Summ J., p. 12.)

"Collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication." Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003). In order to determine whether collateral estoppel applies here, this Court must apply New York's collateral estoppel rules since Plaintiff's prior judgment of conviction was rendered in New York. See Sullivan, 225 F.3d at 166. Under New York law, collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 690 N.Y.S.2d 478, 482, 712 N.E.2d 647 (1999)).

"The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion." Sullivan, 225 F.3d at 166. And, in this context, "[t]he doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." Id. The moving party fails to meet its burden when its submits only a limited portion of the criminal trial record, and omits the jury instructions from the criminal trial. Hardy v. Plante, 06-CV-687, 2009 WL 249787, at *4 (N.D.N.Y. Feb. 3, 2009).

Collateral estoppel does not apply here for two reasons. First, Defendants fail to

meet their burden because they filed only selected excerpts from Plaintiff's criminal trial. (Docket No. 16, Ex. G, pts. 1-3.) Notably absent from Defendants' submissions are the Court's jury instructions. Second, Defendants' argument is misplaced because Plaintiff does not attempt to "re-litigate his own conduct." In fact, Plaintiff explicitly concedes that he put his fists up in front of his chest, was taken to the ground by Yaeger and Kibler, moved his hand around so it could not be handcuffed, and was convicted of resisting arrest and trespassing. (Pl.'s Mem Opp. Summ J., p. 8.) Furthermore, Defendants do not specifically identify the conduct Plaintiff is purportedly attempting to re-litigate, but argue instead that Plaintiff must not be allowed to deny his conduct at some point in the future.

Additionally, Defendants improperly stretch their collateral estoppel argument to reach a conclusion that is the very question at issue. For example, Defendants argue that "[s]ince Plaintif is collaterally estopped from denying his dangerous conduct ... and may not offer any evidence inconsistent therewith, Defendants' undisputed conduct in subduing Plaintiff was objectively reasonable as a matter of law." (Defs.' Reply Supp. Summ J., p. 5.) This is incorrect for a number of reasons. First, for the reasons mentioned above, collateral estoppel does not apply here. Second, the Officers' conduct is not "undisputed" as Defendants allege, but is rather the very question at issue. And third, this case is about the conduct of the Officers, and their conduct was not distinctively put in issue nor directly determined in the criminal prosecution.

Lastly, Defendants' reliance on Diggs is misplaced. 2005 WL 3533158. In Diggs, the plaintiff had been convicted of criminal possession of a weapon in the second and third degrees and attempted murder of a police officer in the first degree. Id., at *3. In his subsequent civil suit for excessive force, plaintiff argued that "he was unconscious or that

he otherwise did not in fact fire a weapon." Id., at *4. The Court held that the plaintiff was collaterally estopped from arguing that he was unconscious because he was convicted of attempted murder, a certain type of conduct that requires consciousness. Unlike Diggs, Plaintiff here does not deny the conduct that formed the basis of his convictions for trespass and resisting arrest. And further, one's conviction for resisting arrest does not automatically preclude a subsequent civil suit for the use of excessive force during the arrest. Sullivan, 225 F.3d at 165-66. Therefore, on the issue of collateral estoppel, Diggs is not instructive.

. . .

Accordingly, Defendants' alternative collateral estoppel argument is denied.

### ii. Fourteenth Amendment Analysis

Plaintiff also alleges that the Defendant Officers' use of excessive force violated his Fourteenth Amendment rights. (Docket No. 1, ¶¶ 13-14.) Defendants move for summary judgment as to Plaintiff's Fourteenth Amendment claim arguing that "only the conduct of Yaeger and Kibler *during the course of the arrest* is at issue on this motion." (Defs.' Mem. Supp. Summ J., p. 7) (emphasis added). Plaintiff neither addresses nor opposes this aspect of Defendants' motion.

The Fourteenth Amendment's guarantee of substantive due process is not implicated as a result of an officer's alleged excessive force during the arrest of a criminal suspect. See Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) (citing Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) ("excessive force used by officers arresting

suspects implicates the Fourth Amendment's prohibition on unreasonable seizures, rather than the Fourteenth Amendment's guarantee of substantive due process")).  However, "where the alleged excessive force occurs 'outside the context of an arrest,' plaintiff's §1983 claim is analyzed under the Fourteenth Amendment Due Process Clause."  DeVito v. Barrant, No. 03-CV-1927, 2005 WL 2033722, at *5 (E.D.N.Y. Aug. 23, 2005) (quoting Hemphill, 141 F.3d at 418)).

Although Plaintiff alleges in his Complaint that Yaeger and Kibler applied excessive force "[d]uring their arrest of the Plaintiff *and thereafter*," (Docket No. 1, ¶ 13) (emphasis added), Defendants' Motion for Summary Judgment on this issue is granted because Plaintiff has abandoned his Fourteenth Amendment claim.  See Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998); see also Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998) (where claim was alleged in the complaint but "not raised elsewhere in the record," court deems claim "abandoned" and grants defendants' summary judgment motion).  Moreover, in its opposition papers, Plaintiff refers to its excessive force claim only as a Fourth Amendment issue.  (Pl.'s Mem. Opp. Summ J., p. 3.)

. . .

For the reasons stated above, Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claim is granted.

**C.      Plaintiff's Claim for Assault and Battery under New York State Law**

In his Complaint, Plaintiff alleges that Sergeant Yaeger, Officer Kibler, and the City

of Batavia assaulted and battered him.  (Docket No. 1, ¶ 21.)  Defendants argue that they are entitled to summary judgment for the same reasons set forth in their discussion on Plaintiff's excessive force claims.  (Defs.' Mem. Supp. Summ J., p. 15.)  Defendants alternatively argue that Plaintiff is collaterally estopped from re-litigating his own conduct. In support of their alternative argument, Defendants cite to a New York State case from the Appellate Division, Second Department, Chism v. New York City Transit Authority, and a portion of the case that states, "a criminal conviction *can* be conclusive proof of the underlying facts in a subsequent civil action."  145 A.D.2d 400, 402 (2d Dep't 1988) (emphasis added).

### i.    *Plaintiff's Claim Against Yaeger and Kibler*

In analyzing Plaintiff's state law claims for assault and battery, this Court must apply the same standard as it did for Plaintiff's Fourth Amendment excessive force claim.  See Pierre-Antoine v. City of New York, No. 04-CV-6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.") (internal citation and quotation omitted); see also DeVito v. Barrant, No. 03-CV-1927, 2005 WL 2033722, at *7 (E.D.N.Y. Aug. 23, 2005) (denying summary judgment as to state law assault and battery claims based on prior determination that summary judgment should be denied as to plaintiff's section 1983 excessive force claim).

Because there is a genuine issue of material fact as to whether the Officers used excessive force against Plaintiff, there is likewise a genuine issue of material fact as to whether Yaeger and Kibler committed assault and battery against Plaintiff.  Therefore,

summary judgment is denied as to Plaintiff's claims of assault and battery.

In regard to Defendants' alternative argument, this Court rejects the argument for the same reasons set forth above. This Court also finds that Defendants' reliance on Chism for the proposition that a "criminal conviction can be conclusive proof of the underlying facts in a subsequent civil action" is misplaced, for the reasons that the preclusive effect is not automatic and because Chism involved an erroneous jury charge. Thus, Chism is not instructive.

### ii. Plaintiff's Claim Against the City of Batavia

Plaintiff also names the City of Batavia as a Defendant in its cause of action for assault and battery under New York State law. Neither Plaintiff nor Defendants specifically discuss the City of Batavia on Defendants' Motion for Summary Judgment. But since Defendant has moved for summary judgment "dismissing the Complaint in its entirety," (Defs.' Mem. Supp. Summ J., p. 1), and part of the Complaint is Plaintiff's claim for assault and battery against the City of Batavia, this Court will undertake an analysis of summary judgment on this claim.

"Although respondeat superior claims are barred against municipalities for § 1983 violations under Monell, such claims are available for violations of state law." Wu v. City of New York, 934 F.Supp. 581, 591-92 (S.D.N.Y. 1996) (citing Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 38 (2d Cir. 1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986)). And "[u]nder New York law, municipalities may be vicariously liable for negligent actions and intentional torts of police officers." Chen v. City of Syracuse, No. 06-CV-1143, 2009 WL 529553, at *9 (N.D.N.Y. Mar. 2, 2009). Because a jury could find that Yaeger and Kibler committed the intentional torts of assault

19

and battery, the City of Batavia could similarly be found liable under a theory of respondeat superior.

. . .

For the reasons stated above, Defendants' Motion for Summary Judgment on Plaintiff's claims for assault and battery against Sergeant Yaeger, Officer Kibler, and the City of Batavia is denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part consistent with this Decision and Order.  Specifically, Defendants' Motion for Summary Judgment on Plaintiff's claim of excessive force brought pursuant to the Fourteenth Amendment is granted.   However, Defendants' Motion for Summary Judgment on Plaintiff's claim of excessive force brought pursuant to the Fourth Amendment and Plaintiff's claim for assault and battery brought under New York State law is denied.  Moreover, Defendants' Motion for Summary Judgment on the grounds that they are entitled to qualified immunity and that collateral estoppel applies is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 14) is GRANTED in part and DENIED in part consistent with this Decision and Order.

SO ORDERED.


Dated:   June 3, 2009
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge